**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**DRIVER OPPORTUNITY PARTNERS I, LP**,

*Plaintiff*,

v.

**AMERISERV FINANCIAL, INC.**,

*Defendant*.

Civ. A. No: 3:22-cv-237

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Driver Opportunity Partners I, LP ("Driver" or "Plaintiff"), by and through its undersigned counsel, hereby asserts the following Complaint against Defendant AmeriServ Financial Inc. ("AmeriServ" or "Defendant") seeking declaratory and injunctive relief.

**PRELIMINARY STATEMENT**

1. This is an action brought by Driver to enforce its rights as a shareholder of AmeriServ under the Pennsylvania Business Corporation Law, specifically 15 Pa. C.S § 1508, which grants Driver the right to demand and inspect the books and records of AmeriServ.

2. Driver respectfully requests an order from this Court, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, (a) declaring that Driver is entitled to examine the books and records of AmeriServ as articulated below, (b) exercising the Court's traditional equity power to compel AmeriServ to permit inspection of its records by a shareholder, thereby enforcing Driver's rights under 15 Pa. C.S § 1508, and (c) ordering that AmeriServ reimburse Driver for its attorneys' fees and costs associated with this action.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 29 U.S.C. § 1332(a). AmeriServ is a citizen of the Commonwealth of Pennsylvania, Driver's general and limited partners are not citizens of Pennsylvania, and the matter in controversy exceeds the $75,000 in value, given that Driver owns shares of AmeriServ valued at well in excess of $75,000.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because AmeriServ's headquarters is located within this District, in Johnstown, Pennsylvania, and the transactions and acts that give rise to this action occurred in this District.

## PARTIES

5. Driver Opportunity Partners I, LP is a AmeriServ shareholder. As of the date of this filing, Driver, is the owner of 101,000 shares of AmeriServ's common stock, [1] trading on the NASDAQ exchange as of the date of this filing at $4.01 per share.

6. Defendant AmeriServ Financial Inc. is incorporated under the laws of Pennsylvania and traded on the NASDAQ exchange under the ticker "ASRV."

## FACTUAL ALLEGATIONS

7. Pursuant to 15 Pa. C.S § 1508(b), every shareholder of a Pennsylvania corporation has the right, upon demand, "to examine, in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books and records of account, and minutes of, and consents in lieu of meetings by, the incorporators, shareholders and directors and to make copies or extracts therefrom."

8. On November 22, 2022, Driver wrote to Jeffery Stopko, Chief Executive Officer of AmeriServ, at AmeriServ's principal place of business at 216 Franklin Street, Johnstown,

---

[1] *See* Driver Opportunity Partners I LP, et al., Schedule 13D, Nov. 18, 2022, *at* https://www.sec.gov/Archives/edgar/data/707605/000092189522003096/sc13d12447006_11182022.htm.

Pennsylvania 15901, exercising its rights as a shareholder to demand the inspection and copying of the following books and records of account and other documents, as authorized by 15 Pa. C.S. § 1508(b) ("Demand"):

a. Documents relating to payments made to AmeriServ's named executive officers pursuant to (or in lieu of payments made pursuant to) AmeriServ's Executive At-Risk Incentive Compensation Plan (the "Incentive Compensation Plan") for the years 2015 through 2021 (collectively, the "Incentive Compensation Books and Records"), which included:

i. All documents relating to setting corporate performance goals, including any budgets, studies, analyses, or other materials prepared for the compensation / human resources committee (the "Compensation Committee") of AmeriServ's board of directors (the "Board") by AmeriServ's management, or by any outside consultants;

ii. All documents (including minutes of meetings of the Compensation Committee and/or the Board) regarding any deliberation, analysis, or discussion by the Compensation Committee and/or the Board concerning whether the incentives created by the corporate performance goals would increase shareholder value or whether it was appropriate to set incentive compensation targets for AmeriServ's named executive officers (as defined in 17 C.F.R. § 229.402) ("NEOs") for corporate performance (as measured by

          return on assets ("ROA")) that were significantly below peer averages;

iii. Any documents that would support the Compensation Committee's conclusion that the corporate performance goals "were appropriate";

iv. All documents relating to the Compensation Committee's decisions to award discretionary bonus payments to NEOs for the year 2021, despite the fact that corporate performance targets were not met; and

v. All documents relating to services performed by Strategic Compensation Planning, Inc. (or any similar compensation consultant) for the Compensation Committee, including, without limitation, any description of scope of work, analysis of, or recommendations with respect to performance measures, reviews, or analysis of compensation practices and/or any benchmarking, peer comparison, or similar analyses.

b. Documents relating to Board oversight of the performance of AmeriServ's Chief Executive Officer ("CEO") (collectively, the "CEO Accountability Books and Records"), which included:

i. All documents relating to any review by the Board or any committee thereof of the CEO's performance as well as any documents evidencing any deliberation by the Board regarding the renewal of the CEO's employment agreement for the years 2017 through 2022;

c. Certain shareholder-related documents (the "Shareholder Books and Records"), which included:

i.        A complete record or list of the holders of the common stock, certified by the AmeriServ's transfer agent(s) and/or registrar(s), showing the name, address, and number of shares registered in the name of each such holder as of the date hereof;

ii.       Relating to the shareholder register and all other information described above, electronic media containing such information (in excel or other sortable electronic format), the computer processing data necessary for Driver to make use of such information on electronic media, and a hard copy printout of such information in order of descending balance of number of shares for verification purposes, as of the date hereof;

iii.      A stop transfer list or stop lists relating to shares of the common stock and any additions, deletions, changes, or corrections made thereto from the date of the list referred to above, and any daily transfer sheets after the date hereof; and

iv.      All information in AmeriServ's, its transfer agent(s)', registrar(s)', proxy solicitor(s)', or other agent(s)' possession or control, or that can reasonably be obtained from nominees of any central certificate depository systems or their nominees, brokers, dealers, banks, respondent banks, clearing agencies, voting trusts and their nominees, or other nominees, concerning the number, identity of, and shares held by the actual beneficial owners of the common stock as of the date hereof, including an alphabetical breakdown of any

holdings in the respective names of Cede & Co. and other similar depositories or nominees, including (a) respondent bank lists, and all omnibus proxies and related respondent bank proxies and listings issued pursuant to Rule 14b-2 under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and (b) all "Weekly Security Position Listing Daily Closing Balances" reports issued by The Depository Trust Company with respect to the AmeriServ's stock in Excel or other sortable electronic format.[2]

9. Driver made this Demand in good faith, in record form, and the Demand was verified, as required by 15 Pa. C.S. § 1508(b.1)(3).

10. Driver also made this Demand with a proper purpose, as required by 15 Pa. C.S. § 1508(b.1), because the Demand was "reasonably related" to Driver's interests "as a shareholder"; and Driver explained how the records it desired to inspect and copy relate to that purpose. 15 Pa. C.S § 1508(b.1)(1), (4).

11. Specifically, Driver explained that its demand to inspect AmeriServ's books and records, and the specified documents demanded, are related to Driver's concerns regarding AmeriServ's significant underperformance as compared to its peers[3] as measured by AmeriServ's ROA over time.

12. Driver also explained that its Demand arose out of its concerns that AmeriServ's valuation has historically lagged behind peers, as measured by AmeriServ's price to tangible book

[2] A true and correct copy of Driver's Demand is attached hereto as Exhibit 1.
[3] Driver considers AmeriServ's relevant peer group as the financial institutions and banks listed in the Dow Jones U.S. Micro Cap Banks Index.

value ("P/TBV").[4] Since 2007, AmeriServ's common stock has traded at a discount to its tangible book value per share, which reflects market sentiment that AmeriServ is worth less as a going concern than it would be worth in a liquidation.

13. Driver explained that, per AmeriServ's proxy statements for its annual meeting of shareholders for the years 2016 through 2022 (the "Proxy Disclosures"), there supposedly are two components of the corporate performance goal for purposes of the Incentive Comp Plan: (1) reported ROA[5] must be greater than budgeted ROA[6]; and (2) reported ROA must be greater than a percentage (ranging from 60% to 65%) of the average reported ROA for a listed set of peers.[7]

14. In stark contrast to AmeriServ's peers, whose budgeted ROA for any given year is regularly significantly less than their reported ROA, AmeriServ's reported ROA more often than not falls drastically short of the very low bar AmeriServ sets in its budgeted ROA. Indeed, Driver explained that AmeriServ's reported ROA exceeded its budgeted ROA in only three years during the period from 2015 through 2021; and, for one of those years (2021), reported ROA was less than the Fractional Peer ROA.

15. Nevertheless, despite these repeated failures to meet performance benchmarks, AmeriServ's Compensation Committee determined to make "discretionary bonus payments" to AmeriServ's NEOs, at least in 2021.

16. And, on April 27, 2015, AmeriServ entered into an employment agreement with its CEO, Jeffery Stopko, which had a two-year term with subsequent automatic renewals for a term

---

[4] Tangible book value per share represents the theoretical amount that each holder of shares of common stock would receive per share in the event AmeriServ was liquidated.
[5] "Reported ROA" means ROA reported by AmeriServ.
[6] "Budgeted ROA" means the budgeted ROA used for purposes of the Incentive Comp Plan.
[7] That percentage amount will be referenced throughout as the "Fractional Peer ROA."

of one year, unless either AmeriServ or Mr. Stopko delivered a written non-renewal notice at least ninety days prior to the renewal date.

17. In its Demand, Driver also noted that, since 2015 (and, indeed, well before then), and no doubt as a result of its repeated failures to keep up with peer profitability (as measured by ROA), AmeriServ's common stock has traded at a significant discount, as measured by P/TBV, as compared to its peers and AmeriServ's theoretical liquidation value.

18. Driver explained in its Demand that the fact that AmeriServ's reported ROA so often fell short of its budgeted ROA was, for Driver, as a shareholder, very concerning, and raised the obvious question of whether the Board was exercising its proper oversight function and holding the CEO and AmeriServ's other NEOs accountable for AmeriServ's long-term and systemic financial underperformance.

19. Accordingly, Driver articulated three purposes for its Demand, each of which is proper under Pennsylvania law:

    a. *First*, to determine whether the Compensation Committee and/or the Board—by setting such a low bar for purposes of the Incentive Comp Plan—failed to create sufficient incentives for the NEOs to take such actions as might be necessary to increase AmeriServ's profitability (and thus the value of shareholders' investment in AmeriServ), including:

        i. determining whether the Compensation Committee and/or the Board took into account the reasonably foreseeable impact of its decisions regarding corporate performance goals on AmeriServ's financial performance and shareholder value; and

        ii. determining how the corporate performance goals were set—whether such goals were the product of (1) thorough analysis by the members of the Compensation Committee in the discharge of their duties in good faith, in a manner reasonably believed to be in the best interests of AmeriServ, and with the degree of care that an ordinary, prudent person in like position would use under similar circumstances, or (2) merely a rubberstamping exercise whereby the Compensation Committee accepted corporate performance goals prepared by AmeriServ's NEOs based on their expectation of meeting such goals rather than how such goals might work towards increasing shareholder value.

b. *Second*, to determine how the Board made its annual decision not to issue a notice of non-renewal of Mr. Stopko's employment contract and, specifically, whether the Board considered AmeriServ's drastic underperformance (and consistent inability to meet budgeted ROA) in that decision, including:

i. determining the extent to which the Board, as part of its annual decision whether to permit Mr. Stopko's employment contract to renew, evaluated Mr. Stopko's performance and contemplated holding him accountable for AmeriServ's repeated failure to meet even modest ROA targets.[8]

[8] In its Demand, Driver explained that it believes proper management of AmeriServ includes holding its CEO accountable for AmeriServ's performance and, when that performance is consistently unsatisfactory, replacing the CEO. Driver also explained that it believes that retaining

c. *Third*, to enable Driver to communicate with other shareholders in order to, among other things, ascertain their views as to AmeriServ's management, performance, and strategic decision.

20. On November 30, 2022, Driver received a response to its Demand from AmeriServ's counsel ("Response").[9] In that Response, AmeriServ's counsel indicated that AmeriServ "is unable to substantively respond" to Driver's Demand "at this time," arguing that Driver's Demand, in AmeriServ's view, did "not comply with Pennsylvania law, including, but not limited to," the requirement that "it state a proper purpose" and because it sought "documents not permitted by Section 1508."

21. AmeriServ has failed to grant Driver access to any books and records.

**COUNT I**
**ENFORCING INSPECTION OF CORPORATE RECORDS**
**PURSUANT TO 15 Pa. C.S. § 1508(c)**

22. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

23. By letter dated November 22, 2022, Driver demanded that AmeriServ furnish it with certain information and documents regarding AmeriServ's corporate affairs and financial condition to which Driver is entitled under and pursuant to Pennsylvania law, including 15 Pa. C.S § 1508 ("Demand").

24. Driver's Demand was sent to AmeriServ via Federal Express at AmeriServ's corporate address, 216 Franklin Street, Johnstown, Pennsylvania 15901, with attention to

---

a CEO who has repeatedly failed to meet the Board's expectations (in terms of AmeriServ's profitability) constitutes improper management. Driver also explained, more broadly, that it believes that the fact that AmeriServ's common stock has consistently traded below liquidation value indicates a fundamental lack of public market confidence in AmeriServ's CEO—a lack of confidence that has impaired the value of AmeriServ's shareholders' investments—and that proper management would dictate a wholesale reassessment of AmeriServ's leadership.

[9] A true and correct copy of that response is attached hereto as Exhibit 2.

AmeriServ's Chief Executive Officer, Jeffrey Stopko. Driver's Demand was also emailed to Mr. Stopko, using his AmeriServ email address.

25. Driver's Demand was made in good faith, in record form, and the Demand was verified.

26. Driver's Demand sets forth the purpose for which the inspection was being sought, that purpose was proper and was related to Driver's interests as a shareholder of AmeriServ, and Driver explained how the specific documents it demand related to that purpose.

27. AmeriServ refused Driver's Demand and failed to respond within 5 business days after that Demand was made and received, as required by 15 Pa. C.S § 1508(c).

28. As a result of AmeriServ's conduct, Driver has been damaged, in that its rights as a shareholder of AmeriServ under Pennsylvania law have been violated.

**PRAYER FOR RELIEF**

**WHEREFORE**, Driver requests the following relief:

(a) an Order declaring that Driver has the right, under Pennsylvania law, to demand, inspect, and make copies of all corporate records required to be maintained under 15 Pa. C.S. § 1508(a) as well as those records identified in Driver's written Demand;

(b) an Order compelling AmeriServ to permit Driver to inspect and make copies of all corporate records required to be maintained under 15 Pa. C.S. § 1508(a), as well as those records identified in Driver's written Demand;

(c) an Order compelling AmeriServ to reimburse Driver for its attorneys' fees and court costs associated with this action; and

(d) all other relief this Court deems appropriate.

Respectfully submitted,

Date: December 9, 2022

*/s/Jonathan S. Krause*
Jonathan S. Krause, Esq.
Thomas V. Ayala, Esq.
Ryan M. Moore, Esq.
KLEHR HARRISON
HARVEY BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
ph (215) 569-2700
fax (215) 568-6603
tayala@klehr.com
rmoore@klehr.com

*Counsel for Plaintiff*
*Driver Opportunity Partners I, LP*